**E. S. Auer and Charles S. Nelson, Plaintiffs Below. Charles S. Nelson, Appellant, v. Wm. Meyer Company et al., Appellees.**

**Gen. No. 41,796.**

Heard in the second division of this court for the first district at the June term, 1941. Opinion filed March 8, 1944. Rehearing denied March 24, 1944.

WHITMAN, HOLTON & TEWS, of Chicago, for appellant.

GUSTAV E. BEERLY, of Chicago, for appellees; JOHN F. DIFFENDERFFER, JR. and MAURICE J. COSTELLO, both of Chicago, of counsel.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This action was instituted on June 18, 1935 by E. S. Auer as plaintiff by filing what is commonly referred to as a minority stockholder's complaint against the defendants, the Wm. Meyer Company, a corporation, and L. R. Meyer, individually and as executrix of the estate of William Meyer, deceased, Oliver Norden and Dwight C. Hudson, directors of The Wm. Meyer Company (hereinafter for convenience referred to as the Meyer Co.).

On January 3, 1936, Charles S. Nelson was granted leave to join as coplaintiff and on the same day an amended complaint was filed by Auer and Nelson. Defendants filed their answer on May 11, 1936 and the cause was referred generally to a master in chancery. After the proofs were closed and argument before the master had been concluded defendants filed an amendment to their answer on April 29, 1937, in which they alleged among other defenses that plaintiffs were guilty of laches. In his report the master found that plaintiffs were entitled to an accounting but he also found that they were guilty of laches and limited the accounting to the five-year period immediately preceding the filing of the complaint. The master recommended that the proceeding be dismissed as to L. R. Meyer as executrix of the estate of William Meyer, deceased. Plaintiffs' objections to the master's report, which were ordered to stand as exceptions, were overruled by the chancellor who entered a decree in conformity with the master's report. From that decree this appeal is taken by plaintiff Nelson. The complaint and the amended complaint were dismissed as to plaintiff Auer by stipulation between his attorney and the attorney for the defendants after the entry of the decree. Defendant Dwight C. Hudson died during the pendency of this proceeding in the trial court and it

was stipulated not to make his personal representatives parties defendant.

The original complaint filed by Auer alleged in substance that he was a minority stockholder of Meyer Co., the defendant corporation; that the individual defendants and William Meyer, during his lifetime, as directors and officers of the Meyer Co., had unlawfully paid bonuses to themselves out of the funds and assets of said corporation; and that the amounts and the dates of payment of such bonuses were unknown to plaintiff and were known only to the defendant corporation and its directors. Discovery and an accounting were prayed for.

The amended complaint alleged that "on January 1, 1918, all capital stock of the defendant company was held and owned as follows:

| | |
|---|---|
| William Meyer | 145 shares |
| Conrad E. Anderson | 10 shares |
| Defendant, L. R. Meyer | 5 shares |
| Defendant, Oliver Norden | 10 shares |
| Plaintiff, Charles S. Nelson | 10 shares |
| Plaintiff, E. S. Auer | 10 shares |
| Defendant Company (as Treasury Stock | 10 shares |
| Total | 200 shares." |

It then alleged that plaintiffs and L. R. Meyer and William Meyer continued to own and hold the aforesaid number of shares of stock in the defendant company until William Meyer's death; that William Meyer was the husband of defendant L. R. Meyer and died testate on August 6, 1934; that "as executrix and sole beneficiary under the will of William Meyer, L. R. Meyer receives and takes the entire estate of said William Meyer, which includes 145 shares of said capital stock of the defendant company"; and that "continuously since the death of William Meyer the ownership and

holding of all the capital stock of said company has been and now is as follows:

| | |
|---|---|
| Defendant, L. R. Meyer, as said executrix | 145 shares |
| Defendant, L. R. Meyer, individually | 5 shares |
| Defendant, Oliver Norden | 10 shares |
| Plaintiff, E. S. Auer | 10 shares |
| Plaintiff, Charles S. Nelson | 10 shares |
| E. F. Teigler | 2 shares |
| Defendant Company, as Treasury stock | 18 shares |
| Total | 200 shares." |

It was further alleged that in the process of exploiting the defendant company the stock of William Meyer and Mrs. Meyer had been continuously controlled and voted as a single block; that by such control they had at all times elected themselves and other persons subservient to them as a majority of the Board of Directors and had elected themselves continuously to the offices of President and Treasurer of. the defendant company; that they had conducted the business of said company and diverted its assets to themselves in an arbitrary manner and in disregard of the best interests of the company; that they had caused and permitted no meetings of stockholders or directors to be held and had maintained and kept no minute book available for plaintiffs and other stockholders; that they had accumulated and continued to hold an excessive surplus in the treasury of the defendant company to plaintiffs' injury; that they had from time to time without consultation with or the knowledge of plaintiffs and without authorization by vote of the stockholders or directors of said company caused to be paid to themselves in excess of $500,000 as bonuses, which payments were without warrant in fàct or in law and were wrongful misappropriations; that they had for the purpose of

concealing these misappropriations destroyed or refrained from keeping proper books of account and records and had in other ways systematically diverted funds and moneys of the company and had made false entries which an investigation would disclose; and that many of the identical securities wrongfully taken by William Meyer and L. R. Meyer from the reserve fund in the treasury of the Meyer Co. were retained by said William Meyer up to the time of his death and were thereafter inventoried by L. R. Meyer, his executrix, who still claims them as her property. The amended complaint also sought discovery and an accounting.

Defendants' answer specifically denied every charge of wrongdoing made in the amended complaint.

The pertinent findings contained in the master's report and his conclusions of fact and law thereon are as follows:

"That during the period beginning with the year 1918 to and including 1934, William Meyer and L. R. Meyer drew large sums in an aggregate amount in excess of $325,000.00 as shown by the federal income tax returns of the company, as follows:

| Year | Compensation William Meyer | Compensation L. R. Meyer |
|------|------|------|
| 1918 | $ 6,000.00 | $ 2,987.00 |
| 1919 | 5,100.00 | 5,320.00 |
| 1920 | 7,400.00 | 7,120.00 |
| 1921 | 2,400.00 | 3,120.00 |
| 1922 | 2,400.00 | 3,120.00 |
| 1923 | 2,400.00 | 1,755.00 |
| 1924 | 13,900.00 | 1,300.00 |
| 1925 | 15,535.00 | 7,300.00 |
| 1926 | 31,328.25 | 29,650.00 |
| 1927 | 24,857.50 | 24,000.00 |
| 1928 | 35,040.36 | 30,000.00 |
| 1929 | 15,868.00 | 25,000.00 |
| 1930 | 6,545.00 | 3,600.00 |

| Year | Compensation William Meyer | Compensation L. R. Meyer |
|---|---|---|
| 1931 | 4,000.00 | 1,000.00 |
| 1932 | ....... | ....... |
| 1933 | ....... | ....... |
| 1934 | ....... | 500.00 |
| Total | $172,774.11 | $145,772.00 |

"That said federal income tax returns designated the amounts drawn as aforesaid as 'Salaries' paid to William Meyer and L. R. Meyer, whereas these items were recorded upon the books of the corporation as items of 'Bonus.' Said amounts paid to L. R. Meyer were for services rendered by and for the use of William Meyer.

"That no attempt was made by the officers or directors of the company, or particularly by William Meyer, who was president thereof from the date of the formation of the company to the date of his death, to keep accurate corporate records, or full minutes of said company, other than the appointment of officers and directors of the company from time to time; that no formal resolutions of any kind were drawn or recorded for the payment of said bonuses.

"The salary fixed in the by-laws of the company for the compensation of William Meyer as president was the sum of $50.00 per week.

"The Master finds that it is necessary that plaintiffs establish (1) that a fiduciary relationship exists between plaintiffs and the defendants; (2) that an active concealment of essential facts by William Meyer and L. R. Meyer which caused plaintiffs to be lulled into a sense of security so as to prevent them from making inquiry relative to or ascertaining the financial affairs of the company.

"The relationship of employer and employee or director and stockholder is not such a fiduciary relationship which, standing alone, will cause a Court of equity to excuse the exercise of reasonable diligence or pre-

vent the defense of laches from being invoked against plaintiffs.

"During the five year period directly preceding June 18, 1935, William Meyer and L. R. Meyer received in the form of salaries for the years 1930, 1931 and 1934, as shown by the income tax returns, the aggregate sum of $15,645.00, which sum as disclosed by the records of the company was considered as 'bonus' payments; since said sum can only be considered as salary due William Meyer to the extent of $50.00 per week, the excess thereof must be considered as being applicable to bonuses due William Meyer; the basis for computing the amount of bonus to be received by William Meyer was arbitrarily arrived at by William Meyer and fixed without authorization by the directors of the company.

"Plaintiffs are guilty of laches in the assertion of their rights; that in view of the findings heretofore made which are the basis for the Master's conclusion of law that plaintiffs are guilty of laches, and particularly the finding that this proceeding must be considered in effect to be the action of the corporation, a Court of equity must follow the law and the Statute of Limitation of five years from July 18, 1935, should be invoked against the plaintiffs.

"Subsequent to the filing of the complaint, the defendant Dwight C. Hudson died and the plaintiffs stipulated not to make his personal representatives parties defendant; that the testimony submitted with respect to the liability of L. R. Meyer as executrix under the will of William Meyer, deceased, after excluding testimony inadmissible by reason of statutory restrictions, is insufficient to sustain plaintiffs' complaint against said estate. The Master finds and recommends that this proceeding be dismissed as to Dwight C. Hudson and L. R. Meyer as executrix under the will of William Meyer, deceased.

"The remaining defendants should be required to account for any and all items of bonus payments; that in addition thereto the plaintiffs are entitled to a full and

complete accounting, said accounting to be limited to the period subsequent to the period June 18, 1930.

"In conclusion the Master recommends that a decree for an accounting be entered in accordance with the findings and conclusions herein contained and that the costs assessed herein be taxed against the Wm. Meyer Company."

For a proper understanding and consideration of the questions presented for determination a rather complete statement of facts is necessary.

The Meyer Co. was organized July 6, 1906 with a capital stock of $15,000 divided into 150 shares of $100 each. In the spring of 1913 the company merged with a firm consisting of Norden, Anderson and plaintiff Nelson, who were then conducting a similar business. Shortly thereafter the business of the company began to increase rapidly. At the time of the merger the Meyer Co. increased its capital stock to $20,000, divided into 200 shares, and issued to Nelson, Norden and Anderson 10 shares each. The capital stock was then held as follows: Nelson, Norden and Anderson 10 shares each, William Meyer 145 shares, Mrs. Meyer 5 shares, with 20 shares in the treasury. On December 4, 1916, Auer acquired 10 of the treasury shares. On November 11, 1921, Anderson surrendered his 10 shares to the treasury. The defendant Hudson never owned any stock.

The Board of Directors consisted of three members. William Meyer and Mrs. Meyer were elected directors at the first meeting of the stockholders on July 6, 1906. They continued as directors by virtue of this election in 1906 until re-elected on January 3, 1922. Without further election they continued as directors until William Meyer's death. In the beginning, one Fahrney was elected the third director. He was succeeded by Anderson in 1913 and on November 11, 1921 Anderson was succeeded by Tiegler, who served until August 24, 1934, when he and William Meyer were succeeded by Hudson and Norden.

At the first meeting of the Board of Directors on July 7, 1906, William Meyer was elected president and Mrs. Meyer treasurer. By virtue of this 1906 election William Meyer and Mrs. Meyer held their respective offices until re-elected thereto on January 3, 1922—the same day on which they were re-elected directors. No other election of either president or treasurer was held until after the death of William Meyer in 1934. Plaintiff Nelson was neither an officer nor a director of the company at any time. A complete examination of the books and records of the company has not as yet been made, but Claude Wells, an accountant employed by plaintiffs, testified that from a spot audit of such books and records of the Meyer Co. as were made available to him, he found sums withdrawn from the Meyer Co. by William Meyer and Mrs. Meyer and credits given them in addition to their regular monthly salaries as shown in the following tabulation:

| "Date | Checks Paid to Wm. Meyer | Stocks to Wm. Meyer | Credits Wm. Meyer | Royalty Credits Wm. Meyer | Checks Pd. to L. R. Meyer | Credits to L. R. Meyer |
|---|---|---|---|---|---|---|
| 1918 | $ 9,438.62 | ........ | 5,320.00 | ........ | ....... | 1,232.00 |
| 1919 | 1,510.00 | ........ | 2,600.00 | 20,968.00 | ....... | 2,655.00 |
| 1920 | 8,766.17 | ........ | 5,450.00 | 23,030.00 | ....... | 4,000.00 |
| 1921 | 10,888.51 | 10,314.18 | ....... | 7,655.00 | ....... | ....... |
| 1922 | 1,328.40 | ........ | ....... | 5,990.00 | 5,460.00 | ....... |
| 1923 | ........ | ........ | ....... | ........ | 455.00 | ....... |
| 1924 | 3,500.00 | ........ | ....... | | | |
| 1925 | 6,000.00 | 5,835.00 13,100.00 | 6,000.00 | | | |
| 1926 | ........ ........ | 28,498.25 29,230.00 | ....... | | 5,200.00 | |
| 1927 | 17,400.00 | 14,655.00 14,602.50 | ....... | ........ | | |
| 1928 | 19,000.00 | 9,906.61 39,533.75 | ....... | | | |
| 1929 | 21,000.00 | 18,168.00 5,473.00 | ....... | | | |
| 1930 | 7,190.00 | 5,645.00 | ....... | | | |
| 1931 | 5,000.00 | ........ | ....... | | | |
| 1934 | ........ | ........ | ....... | | | |
| | $111,021.70 | $194,961.29 | $19,370.00 | $57,643.00 | $11,615.00 | $7,887.00" |

A recapitulation of the foregoing tabulation shows:

```
By  checks  to  Wm.  Meyer....................$111,021.70
By  stock  transfers  to  Wm.  Meyer........... 194,961.29
                                                            $305,982.99
By  credit  to  Wm.  Meyer in  journal for  bonus....  19,370.00
By  credit  to  Wm.  Meyer in  journal for  royalties..  57,643.00
                                                             77,013.00
                                                            $382,995.99
         Total  to  Wm.  Meyer..................
By  checks  to  L.  R.  Meyer....................  11,615.00
By  credit  to  L.  R.  Meyer.....................  7,887.00
         Total  to  Mrs.  Meyer.................             19,502.00
         Total  to  both........................            $402,497.99
```

The records of the company show no resolution or other authorization for the payment of bonuses to either William Meyer or Mrs. Meyer.

The ledger of the company does not disclose the payment of royalties to William Meyer. In two or three instances over items shown on the "General Bonus Account" as bonuses paid to William Meyer, at some unknown time some unidentified person wrote in pencil the word "royalties." Royalty payments as such are found, and found only, in the company's income tax returns. In January 1936, before the case was referred to the master, plaintiffs took depositions before a commissioner. Mrs. Meyer testified before such commissioner that no royalties were paid by the company to William Meyer or to anyone else up to 1922 and that she had no recollection of any such payments having been made after 1922. The records of the company showed no resolution or other authorization for the payment of royalties at any time. In the minute book, but as no part of the record of any meeting, appears the following in the handwriting of William Meyer which is signed by him:

"I hereby authorize the Wm. Meyer Co. to manufacture and sell until further notice apparatus and equipment under such U. S. and foreign patents issued or to be issued to me, the compensation to me for the use of such patents to be determined by me.

Wm. Meyer

June 19, 1925"

Neither the minute book nor any other record of the company shows that the payment of royalties to William Meyer was authorized by the directors by resolution or otherwise at any time. There was no contract between the company and William Meyer to pay him royalties. Certain royalty credits appear on the company's journal for the year 1922 and for the three years prior thereto but no entry concerning royalties

appears in such journal for any year subsequent to 1922.

Defendants offered in evidence 40 letters patent all or most of which covered apparatus and devices manufactured by the Meyer Co. According to the undisputed evidence the inventions for which these patents issued were in most instances designed and developed not only by William Meyer but by the joint efforts of Meyer and the employees of the Meyer Co. in an experimental shop maintained and manned by said company at its own expense. They were frequently inspired by the devices of the company's competitors or by suggestions of customers of the Meyer Co. Only 6 of the 40 patents were issued prior to the purported royalty credit of $20,968 to William Meyer in 1919. It does not appear what particular royalties, if any, were attempted to be charged against the company.

The following exhibit was received in evidence:

"STATEMENT OF COMPENSATION OF WM.
MEYER AND L. R. MEYER AND OF
ROYALTY EXPENSE.

For the Years 1918–1934 both inclusive, as Disclosed by the Federal Income Tax Returns of Wm. Meyer Co. or by Revenue Agent's Report Thereon.

| Year | Compensation Wm. Meyer | Compensation L. R. Meyer | Royalty Expense |
|------|------------------------|--------------------------|-----------------|
| 1918 | $    6,000.00 | 2,987.00 | . . . . . . . . |
| 1919 | 5,100.00 | 5,320.00 | 20,968.00 |
| 1920 | 7,400.00 | 7,120.00 | . . . . . . . . |
| 1921 | 2,400.00 | 3,120.00 | 7,655.00 |
| 1922 | 2,400.00 | 3,120.00 | 6,598.34 |
| 1923 | 2,400.00 | 1,755.00 | 408.35 |
| 1924 | 13,900.00 | 1,300.00 | 291.68 |
| 1925 | 15,535.00 | 7,300.00 | 6,075.01 |
| 1926 | 31,328.25 | 29,650.00 | 158.35 |

| Year | Compensation Wm. Meyer | Compensation L. R. Meyer | Royalty Expense |
|------|------------------------|--------------------------|-----------------|
| 1927 | 24,857.50 | 24,000.00 | 175.00 |
| 1928 | 35,040.36 | 30,000.00 | 281.19 |
| 1929 | 15,868.00 | 25,000.00 | ........ |
| 1930 | 6,545.00 | 3,600.00 | ........ |
| 1931 | 4,000.00 | 1,000.00 | ........ |
| 1932 | ........ | ........ | ........ |
| 1933 | ........ | ........ | ........ |
| 1934 | ........ | 500.00 | ........ |
| Total | $172,774.11 | 145,772.00 | 42,610.92'' |

The records of the Meyer Co. show that, except for the years 1915 and 1916, it paid no dividends since 1913. Mrs. Meyer testified that no dividend had been paid ''for 20 years or so.''

The evidence discloses that $194,961 of the bonus payments to William Meyer were made by assignment to him of stocks and other securities belonging to the reserve fund of the Meyer Co. and that $60,000 of such securities were still in the hands of Mrs. Meyer as the sole beneficiary of her husband's estate.

Mrs. Meyer, in addition to being a director and treasurer of the Meyer Co., was employed by said company in its office until about 1922 or 1923. Her salary never exceeded $25 a week and William Meyer's authorized salary as president was $50 a week.

All the withdrawals made by William Meyer and Mrs. Meyer from the Meyer Co. in 1918 and up to the time of Meyer's death in 1934, under the guise of bonus payments, were received by them without authorization of the board of directors of said company and the funds and securities so withdrawn were misappropriated in exactly the same manner as were the bonus payments received by them during the five years immediately preceding the filing of the complaint herein. In his report the master made no mention of payments

purportedly received by William Meyer as royalties from the Meyer Co. Such payments, if any, as were received by William Meyer under the guise of royalties are in the same category as the bonus payments and constitute misappropriations, because the records of the Meyer Co. disclose that the directors of said company never authorized the payment of any royalties to William Meyer.

Inasmuch as the master and the chancellor both found that William Meyer and Mrs. Meyer were guilty of misappropriating the payments received by them by way of bonuses, "beginning with the year 1918 to and including 1934," the principal question presented for our determination is whether the chancellor erred in confirming by his decree the further finding of the master that plaintiff was guilty of laches and that therefore the accounting should be restricted to the period of five years immediately preceding the filing of the complaint.

It should be noted that the master also found that the Meyer Co. was conducted by Wm. Meyer as a "one-man corporation" and was controlled by him and his wife and that the amounts of the bonus payments received by them were "arbitrarily arrived at by Wm. Meyer and fixed without authorization by the directors of the company." It should also be noted that defendants filed no objections to the master's report and are therefore bound by the findings contained therein.

We will now consider the findings of the master upon which he predicated his conclusion that plaintiff was guilty of laches. His report found that "it is necessary that said plaintiffs establish (1) that a fiduciary relationship exists between plaintiffs and the defendants; (2) that an active concealment of essential facts by William Meyer and L. R. Meyer which caused plaintiffs to be lulled into a sense of security so as to prevent them from making inquiry relative to or ascertaining the financial affairs of the company"; and that

"the relationship of . . . director and stockholder is not such a fiduciary relationship, which, standing alone, will cause a court of equity to excuse the exercise of reasonable diligence or prevent the defense of laches from being invoked against plaintiffs."

Although the master found that the charges of fraud "set forth in the complaint and amended complaint filed herein by the plaintiff have not been sustained," in our opinion such finding was against the manifest weight of the evidence. As already shown, the master himself found that the bonus payments received by the Meyers were in effect misappropriations and not only the documentary proof but the facts and circumstances in evidence show conclusively that the misappropriations were fraudulently made. Since the Meyers occupied the fiduciary relation of trustees and dealt with the subject matter of the trust relationship in such a manner as to gain advantage to themselves, they must be deemed to be guilty of actual fraud. (*Doner v. Phoenix Joint Stock Land Bank,* 381 Ill. 106, 114.)

Was the relationship between the Meyers as directors of the Meyer Co. and the plaintiff stockholder such a fiduciary relationship as excused Nelson from the exercise of reasonable diligence to discover the fraudulent misappropriations on the part of the Meyers? In *Ellis v. Ward,* 137 Ill. 509, in discussing the nature of the relationship between the directors of a corporation and the corporation and the stockholders thereof and in holding that all of the elements of an express trust exist in such relationship and that no mere lapse of time can bar the recovery of funds of a corporation misappropriated by its directors, the court said at pp. 520, 521:

"It is a principle of general application, and recognized by this court, that the assets of a corporation are, in equity, a trust fund, (*St. Louis and Sandoval Coal and Mining Co. v. Sandoval Coal and Mining Co.,*

116 Ill. 170,) and that the directors of a corporation are trustees, and have no power or right to use or appropriate the funds of the corporation, their *cestui que trust,* to themselves, or to waste, destroy, give away or misapply them. (*Holder v. LaFayette, Bloomington and Mississippi Ry. Co.,* 71 Ill. 106; *Cheeney v. La-Fayette, Bloomington and Mississippi Ry. Co.,* 68 id. 570; 1 Morawetz on Private Corp. secs. 516, 517.) And it is equally well settled, that no lapse of time is a bar to a direct or express trust, as between the trustee and *cestui que trust.* (*Chicago and Eastern Illinois Railroad Co. v. Hay,* 119 Ill. 493; Wood on Limitation of Actions, sec. 200, and cases cited in note.) If the trust assumed by the directors of a corporation in respect of the corporate property under their control is to be regarded as a direct trust, as contradistinguished from simply an implied trust, then it is apparent, under the rule announced, the statute presents no bar to this proceeding by the receiver of the corporation. Ordinarily, an express trust is created by a deed or will; but there are many fiduciary relations established by law, and regulated by settled legal rules and principles, where all the elements of an express trust exist and to which the same legal principles are applicable,—and such appears to be the relation established by law between directors and the corporation. 2 Pomeroy's Eq. sec. 6; id. secs. 1088–1090, 1094 And see, also as respects stockholders, *Hightower v. Thornton,* 8 Ga. 486; *Payne v. Bullard,* 23 Miss. 88; *Curry v. Woodward,* 53 Ala. 371. The Statute of Limitations therefore presented no bar to a recovery by the receiver." (To the same effect are *Dixmoor Golf Club, Inc. v. Evans,* 325 Ill. 612; *Farwell v. Pyle-National Elec. Headlight Co.,* 289 Ill. 157; *Klein v. Independent Brewing Ass'n,* 231 Ill. 594.)

In so far as we have been able to ascertain, the principles of law enunciated in the *Ellis* case have never been overruled or modified. Defendants cite *Becker v. Billings,* 304 Ill. 190 and *Foss v. People's Gas Light &*

*Coke Co.*, 241 Ill. 238, as being in conflict with the broad principles applicable to directors in their trust capacity as announced in the *Ellis* case. It would serve no useful purpose to discuss the *Becker* and *Foss* cases since the facts are not comparable in either of them with the facts here and entirely different questions of law were presented in those cases.

In view of his express findings that the Meyer Co. was conducted as a "one-man corporation," that the one man was William Meyer and that no one "at any time doubted the integrity of William Meyer," the master might well have found that there was a trust relationship between William Meyer and plaintiff Nelson, independent of that arising out of the corporate directorship. In *Lipscomb v. Allen,* 298 Ill. 537, the court said at pp. 544, 545:

" 'The term fiduciary or confidential relation, as used in this connection, is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused, —in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. The only question is, does such a relation in fact exist?' (*Mayrand v. Mayrand,* 194 Ill. 45.) 'It is settled by the overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal. It may be moral, social, domestic or merely personal.' (2 Pomeroy's Eq. Jur.—3d ed.—sec. 956.)"

It is the established law of this State that the failure to use diligence is excused where there is a relationship of trust and confidence which renders it the duty

of the party committing the fraud to disclose the truth to the other. It was stipulated before the master that plaintiff Nelson had no knowledge of the bonus or royalty payments received by the Meyers until shortly before he became a coplaintiff in this proceeding. In *Farwell v. Great Western Tel. Co.,* 161 Ill. 522, wherein a bill in equity was also filed by minority stockholders, the language of the court is peculiarly applicable to the situation presented here. There it was said at pp. 567, 595 and 596:

"No attempt was made by the defendants to show knowledge on the part of the complainants or the company of the June 18 contract. The whole theory of the defense was confined to a denial.

" . . .

"Nor can laches be imputed to these complainants who had no knowledge of the June 18 contract until about one month prior to the time of filing their bill in this cause. It was of such a character that the parties to it would be induced to conceal it on every principle of self-interest and care for their reputation for honesty; and the strenuous efforts of counsel for complainants in this cause to produce the original or to account for it, their final resort to a copy, and the laborious attempts of the parties to that contract to exclude the copy, are evidence of the difficulty with which these complainants were confronted in obtaining knowledge thereof. Neither is there evidence in this record of any facts known to complainants which would put them on inquiry. In *Michoud v. Girod,* 4 How. 503, it is said: 'In general, lapse of time is no bar to a trust clearly established to have once existed, and where fraud is imputed and proved, length of time ought not to exclude relief. . . . Within what time a constructive trust will be barred must depend on the circumstances of the case. There is no rule which excludes the consideration of circumstances, and in a case of actual fraud we believe no case can be found in the books

in which a court of equity has refused to give relief within the lifetime of either of the parties upon whom the fraud is proved, or within thirty years after it has been discovered, or becomes known to the party whose rights are affected by it.'

" . . .

"With reference to whether a cause of action is barred in equity the rule may be stated, that where a cause of action arises from a fraud, the Statute of Limitations will not begin to run nor laches apply until the discovery of the fraud, or from the time when the fraud could have been discovered by the exercise of reasonable diligence; *but in the latter case the failure to use diligence is excused where there is a relation of trust and confidence, rendering it the duty of the party committing the fraud to disclose the truth to the other.* Caswell v. Caswell, 120 Ill. 377; Sloan v. Sloan, 102 id. 581; Jones v. Lloyd, 117 id. 597; Harris v. McIntyre, 118 id. 275; Vigus v. O'Bannon, id. 334; Reynolds v. Sumner, 126 id. 58; Whitlock v. McClusky, 91 id. 582; Prevost v. Gratz, 6 Wheat. 481; Gillett v. Wiley, 126 Ill. 310." (Italics ours.)

(To the same effect are *Klein v. Independent Brewing Ass'n*, 231 Ill. 594; *Farwell v. Pyle-National Elec. Headlight Co.*, 289 Ill. 157; *Voorhees v. Campbell*, 275 Ill. 292 and *Penn v. Fogler*, 182 Ill. 76.)

Being an affirmative defense, the burden of proving laches was upon defendants and not upon plaintiff, as assumed by the master. Therefore the finding of the master that the burden was upon plaintiff to establish that there was "an active concealment of essential facts by William Meyer and L. R. Meyer which caused plaintiffs to be lulled into a sense of security· so as to prevent them from making inquiry relative to or ascertaining the financial affairs of the company" was contrary to law. So also was the finding of the master that "the relationship of . . . director and stockholder

is not such a fiduciary relationship which, standing alone, will cause a court of equity to excuse the exercise of reasonable diligence or prevent the defense of laches from being invoked against plaintiffs.'' It clearly appears from the applicable principles announced in the foregoing decisions that the finding of the master and the chancellor that plaintiff was guilty of laches was contrary to the established law of this State.

While it is true that the Meyers between them owned 15/18ths of the stock of the Meyer Co. and might have honestly taken openly by way of dividends properly declared the major portion of the funds which they took secretly, the fact still remains that they misappropriated the funds of the company by paying to themselves the unauthorized bonuses and royalties. The conclusion is inevitable that they preferred to misappropriate the funds of the company rather than pay dividends to the minority stockholders.

There is no evidence in the record to support the finding of the master that the amounts received by Mrs. Meyer by way of bonuses were ''for services rendered by and for the use of William Meyer.'' If it were true that her services, if any, were so rendered, it is difficult to understand why in filing the income tax returns of the Meyer Co. the bonus payments received by her were, conveniently or otherwise, credited to her own use.

Defendants' counsel sought to justify the bonus payments received by the Meyers by showing that plaintiff Nelson and other employees of the Meyer Co. also received bonus payments. The bonus payments received by said employees were not at all comparable with the bonus payments received by the Meyers. As the master found in respect to the bonus payments made to the employees, ''the company pursued a policy of compensating its employees for services rendered by the payment of a salary smaller than the usual

compensation paid employees for similar services and by the payment of a bonus to each employee, determined solely by William Meyer and based generally upon the amount of business of the company during the preceding year.'' The bonuses paid by the Meyers to themselves bore no relation to their fixed salaries or to either the net profits or the gross receipts of the company. According to the income tax returns, Mrs. Meyer received her largest so-called bonus of $30,000 in 1928, when she wasn't even in the employ or on the payroll of the Meyer Co. It appeared that during its more prosperous years the company accumulated a large surplus and it also appeared from its records that in 1928, when it suffered a net loss of $3,002.38, Meyer received a bonus of more than $68,000 and that in 1926, when the net income of the company was only $657.33, he received a bonus of $62,928.25.

In regard to the findings of the master that there was no evidence of active concealment on the part of the Meyers and that plaintiffs could have informed themselves at any time of the bonus payments to the Meyers, it should be stated that if the conduct of Mrs. Meyer since the institution of this proceeding is any criterion as to what the attitude of the Meyers would have been as to the concealment by them of the bonus payments, it is fair to assume that they would have concealed such payments in so far as they were able.

It is impossible within the confines of this opinion to set forth in detail the numerous instances that evidenced the studied effort on the part of Mrs. Meyer to conceal and withhold the truth as to the bonus payments received by her and the bonus and royalty payments received by William Meyer but the record is replete with such instances. One instance is typical. In the summer of 1935, before Nelson became a co-plaintiff and before the amended complaint was filed, defendants' attorney granted permission to Auer's auditor to examine the books and records of the Meyer

Co. During the course of his examination the auditor discovered that the accounts of William Meyer and of Mrs. Meyer and the bonus account were missing from the looseleaf general ledger. The minute book of the corporation covering the period in question was also missing. Questioned about the missing ledger sheets containing said accounts and the minute book, Mrs. Meyer and the bookkeeper professed ignorance as to the wherabouts of same, and Mrs. Meyer refused to produce them. In 1937 at the master's hearing Mrs. Meyer reluctantly admitted, when forced to do so, that the missing ledger accounts and minute book were in her attorney's office and had been there for a year or two. After the master had signed a certificate for presentation to the chancellor that the missing accounts and minute book were essential to the hearing then in progress before him, they were finally produced.

The defense of this case can only be properly characterized as *shifty*. Mrs. Meyer's testimony is a maze of contradictions and evasions and contains within itself its own impeachment. Every possible effort was made by her and her attorney to impede the discovery of the truth as to the bonus and royalty payments and, as has been seen, the most essential records of the company showing such payments were removed from its office and suppressed and concealed until she was finally forced to produce them.

In *Lockwood v. Rose,* 125 Ind. 588, preliminary to trial and in preparation therefor, depositions were taken under a statute similar to our own. In this preliminary proceeding appellant refused to produce to be read in evidence an important letter "until he was compelled to do so by order of the court." It was argued that "no inference can be drawn against a party for not voluntarily producing papers where the code provides a means for securing their production, and that parties may stand upon their legal rights

without any imputation of bad faith on that account."
There the court said at pp. 594, 595:

"It is often important to know whether a party to a
suit is or is not willing that all the facts shall be known
to the court or jury, or whether he has or has not
suppressed or attempted to suppress important evi-
dence in the cause. The fact that the code provides a
means for compelling an unwilling party to furnish
evidence under his control does not, in our opinion,
affect the question of the inferences to be drawn from
an attempt or refusal on his part to furnish the fa-
cilities at his command, for a fair and full investigation
of the facts in the case."

The master recommended that "the costs assessed
herein be taxed against the Wm. Meyer Company."
In this connection it should be stated that Oliver Norden
did not become a director of the company until after
William Meyer's death and it appears that he is merely
a nominal defendant. That the costs should have been
assessed against defendant Mrs. L. R. Meyer, indi-
vidually, and not against the Meyer Co. is self evident,
and the mere statement of this proposition is sufficient
without further comment. The master and the chan-
cellor found that "the testimony submitted with re-
spect to the liability of L. R. Meyer as executrix under
the will of William Meyer, deceased, after excluding
testimony inadmissible by reason of statutory restric-
tions, is insufficient to sustain plaintiffs' complaint
against said estate." In our opinion this finding is
against the manifest weight of the evidence. There
were no statutory restrictions against the testimony
of the accountant, Claude Wells. His testimony and
the documentary evidence in the record show clearly
and conclusively that William Meyer was guilty of
misappropriating funds of the Meyer Co. and his estate
should be required to account for the funds so mis-
appropriated by him.

Other points have been urged and considered but in the view we take of this case we deem it unnecessary to discuss them.

For the reasons stated herein the decree of the circuit court is reversed in so far as it restricted the accounting to the five year period immediately preceding the filing of the complaint, assessed the costs against the Wm. Meyer Company and dismissed this proceeding as to L. R. Meyer, as executrix under the will of William Meyer, deceased, and the cause is remanded with directions that there be included in the decree an order that the Wm. Meyer Company, L. R. Meyer, individually, L. R. Meyer as executrix under the will of William Meyer, deceased, and Oliver Norden fully and completely account to plaintiff, Charles S. Nelson, for all bonuses received by L. R. Meyer and all bonuses and royalties received by William Meyer during the period from and including 1918 to and including 1934, that the costs be taxed against L. R. Meyer, individually, that the decree include a provision that plaintiff, Charles S. Nelson, be reimbursed out of the fund recovered for the Wm. Meyer Company for the reasonable costs and expenses incurred by him or for which he became obligated in the prosecution of this suit and that the reference to take the accounting include a direction to the master for a hearing on the issue of plaintiff's reasonable expenditures in connection with this proceeding in his effort to create the aforesaid fund for the Wm. Meyer Company.

*Decree reversed in part and cause remanded with directions.*

FRIEND, P. J., and SCANLAN, J., concur.