RESOLUTION TRUST CORPORATION,
Plaintiff,

v.

Henry CHAPMAN, John Crawford, Earl Cunion, Robert Gilmore, David Gould, Robert Jamieson, Nathaniel Ledoux, James Lewis, Howard Sauder, Robert Strehlow, Jr., Donald Ullman, R. Dean Westervelt, Defendants.

No. 92–3188.

United States District Court,
C.D. Illinois,
Springfield Division.

Aug. 9, 1995.

Earl Cunion, Robert Gilmore, David Gould, Robert Jamieson, Nathaniel Ledoux, James B. Lewis, Howard Sauder, Donald Ullman, R. Dean Westervelt.

Richard D. McCoy, Pekin, IL, for Richard Robinson.

Gregg N. Grimsley, Carter Grimsley & Rasmussen, Peoria, IL, for James Sullivan.

## OPINION

RICHARD MILLS, District Judge:

Will the *adverse domination doctrine* be applied in Illinois? If so, does it toll the statute of limitations? Let us see.

### I. Background

Security Savings and Loan Association, F.A. located in Peoria, Illinois, (Security) was a federally chartered savings and loan which was placed into receivership by the Office of Thrift Supervision on August 17, 1989. The Office of Thrift Supervision appointed the Resolution Trust Corporation (RTC) as Security's receiver. On August 14, 1992, the RTC filed this lawsuit against the former President, Senior Vice–President and Directors of Security, alleging negligence and gross negligence, breach of fiduciary duty and breach of contract. This Court dismissed the negligence, breach of fiduciary duty and breach of contract claims, and that dismissal has been affirmed by the United States Court of Appeals for the Seventh Circuit on interlocutory appeal. *Resolution Trust Corp. v. Chapman,* 29 F.3d 1120 (7th Cir.1994).

After receiving the Seventh Circuit's mandate, the RTC filed an Amended Complaint alleging gross negligence against the Senior Vice–President and the former Directors.[1] The Senior Vice–President, Richard Robinson, died shortly before the Amended Complaint was filed and the parties subsequently agreed to dismiss all claims against Mr. Robinson. Accordingly, all remaining Defen-

Carole A. Corns, William A. Spence, Freeborn & Peters, Chicago, IL, Walter Jones, Jr., Jorge V. Cazares, Pugh Jones & Johnson P.C., Chicago, IL, Duane Curtis, Resolution Trust Corp., Overland Park, KS, for Resolution Trust Corp.

Roy G. Davis, Keck Mahin & Cate, Peoria, IL, for Henry Chapman, John Crawford,

---

**1.** The Amended Complaint does not name the former President, James Sullivan, as a Defendant in the case caption or in the first paragraph of the Amended Complaint. Mr. Sullivan is listed as a Defendant in paragraph 18 of the Amended Complaint, however. Mr. Sullivan has not an- swered the Amended Complaint or joined in the other Defendant's motion to dismiss. For purposes of this motion, the Court will treat the RTC's Amended Complaint as though it does not name Mr. Sullivan as a Defendant.

dants were formerly Directors of Security at various times between 1971 and 1989.

When ruling on Defendants' original motion to dismiss, the Court rejected Defendants' argument that several of the RTC's claims were barred by the statute of limitations. This Court held that under the adverse domination doctrine, all of the RTC's claims had been timely brought. In making this determination, the Court relied upon federal common law. This ruling can no longer stand under *O'Melveny & Myers v. FDIC,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

In *O'Melveny,* the Supreme Court reaffirmed the position first announced in *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that "[t]here is no federal general common law." *O'Melveny,* —— U.S. at ——, 114 S.Ct. at 2053 (quoting *Erie,* 304 U.S. at 78, 58 S.Ct. at 822). The Court went on to find that under the comprehensive framework of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. 101–73, 103 Stat. 183, if Congress did not specifically address an issue in FIRREA, that particular issue is to be governed by state law.

> In answering the central question of displacement of [state] law, we of course would not contradict an explicit federal statutory provision. Nor would we adopt a court-made rule to supplement federal statutory regulation that is comprehensive and detailed; matters left unaddressed in such a scheme are presumably left subject to the disposition provided by state law.

*O'Melveny,* —— U.S. at ——, 114 S.Ct. at 2054 (citations omitted).

There is no provision in FIRREA adopting the adverse domination doctrine. Accordingly, under *O'Melveny,* the adverse domination doctrine can only be used to toll the statute of limitations in this case if Illinois law would apply the doctrine. On this point, both parties agree.

The parties disagree, however, as to whether or not Illinois law recognizes the adverse domination doctrine.

## II. Motion to Dismiss

 In ruling on a motion to dismiss, the Court "must accept the well pleaded allegations of the complaint as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Dismissal is not granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

## III. Analysis

### A. *The Claims*

The RTC's gross negligence claims are based on two lending programs entered into by Security with the approval of the Board of Directors. The first lending program involved the purchase of $10.6 million in low-grade consumer automobile paper. This lending program took place between May 1987 and January 1988. Defendants do not claim any of the RTC's claims based on this program are barred by the statute of limitations.

The second lending program at issue involves several commercial real estate loans made by Security which resulted in losses exceeding $5 million. The RTC claims the Board of Directors was grossly negligent in failing to establish appropriate underwriting guidelines for these commercial loans. Defendants claim the statute of limitations has run on these claims.

### B. *The Statute of Limitations*

Under FIRREA, the statute of limitations on tort claims is the longer of three years from the date the claim accrues or the appli-

cable state statute of limitations. 12 U.S.C. § 1821(d)(14). The applicable Illinois statute of limitations is five years from the date the claim accrues. 735 ILCS 5/13–205 (1992). "In interpreting [12 U.S.C. § 1821(d)(14)], however, courts have held that it does not revive stale state law claims that the RTC acquired." *Resolution Trust Corp. v. Farmer*, 865 F.Supp. 1143, 1149 (E.D.Pa.1994) (citations omitted). Thus, if Illinois' five year statute of limitations ran on Security's claims based on the commercial lending programs before the RTC was appointed Security's receiver, those claims were stale when the RTC was appointed receiver and cannot be brought under FIRREA.

 "[A] Cause of action based on tort accrues only when all elements are present—duty, breach and resulting injury or damage." *West Am. Ins. Co. v. Sal E. Lobianco & Son Co.*, 69 Ill.2d 126, 129–30, 370 N.E.2d 804, 806, 12 Ill.Dec. 893, 895 (1977) (citation omitted). The RTC's Amended Complaint alleges Defendants were grossly negligent in approving the commercial real estate loans because they had no previous experience in making commercial real estate loans, appointed a loan officer with no experience in the commercial real estate market to head the commercial loan program, failed to establish any written guidelines, procedures or policies for evaluating and monitoring the commercial loans, and failed to make an independent assessment of the feasibility of the commercial loans. Amended Complaint, para. 49–51, pp. 10–11. These actions caused injury to Security; therefore, Security's gross negligence claims accrued at the time the board approved the commercial loans. *Farmer*, 865 F.Supp. at 1150.

All of the commercial loans described in the RTC's Amended Complaint were approved by the Board prior to August 17, 1984. Defendants assert that all claims against them based on actions taken prior to August 17, 1984 are barred by Illinois' statute of limitations. Defendants further argue that the doctrine of adverse domination cannot be used to toll the five year statute of limitations. According to Defendants, no Illinois court has ever recognized the adverse

domination doctrine; therefore, the doctrine does not exist in Illinois law.

The RTC argues the Supreme Court of Illinois, if presented with the issue, would recognize the adverse domination doctrine and apply the doctrine to this case. Accordingly, the RTC argues this Court should do the same.

### C. *The Adverse Domination Doctrine*

"Under the doctrine of adverse domination, the statute of limitations is tolled for as long as a corporate plaintiff is controlled by the alleged wrongdoers." *Farmer*, 865 F.Supp. at 1151 (citing 3A JAMES SOLHEIM & KENNETH ELKINS, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 1306.20 (perm. ed. rev. vol. 1994)). "The rationale for this principle is that control of the board by wrongdoers precludes the possibility for filing suit since these individuals cannot be expected to sue themselves or initiate action contrary to their own interests." *Federal Deposit Ins. Corp. v. Greenwood*, 739 F.Supp. 450, 453 (C.D.Ill.1989).

In the instant case, the RTC claims Security was controlled by the alleged wrongdoers, the Board of Directors, until August 17, 1989, the date the RTC was appointed receiver for Security. Since Defendants controlled Security until August 17, 1989, the RTC argues, the statute of limitations on the gross negligence claims brought in the Amended Complaint did not begin to run until August 17, 1989. This argument, of course, is premised on the belief that under Illinois law the adverse domination doctrine applies to this case.

### D. *Illinois Law and the Doctrine of Adverse Domination*

Defendants, citing *RTC v. Gravee*, No. 94 C 4589, 1995 WL 75373 (N.D.Ill.1995), argue Illinois law does not recognize the adverse domination doctrine. In *Gravee*, the United States District Court for the Northern District of Illinois found that Illinois did not recognize the doctrine of adverse domination. That decision rested on the fact that no Illinois court had specifically recognized and applied the doctrine of adverse domination. *Id.* at *5. In a footnote, the court acknowl-

edged that some district courts which sat in states that had not specifically recognized the adverse domination doctrine had determined that if faced with the issue the state's highest court would recognize the adverse domination doctrine. Our sister court declined to follow this approach, however, stating:

> we decline to determine that the silence of the Illinois courts means that Illinois would recognize the adverse domination doctrine, as we believe that the adoption of such a rule should more appropriately be considered a rule of federal common law under these circumstances. Such a ruling would fly in the face of the Supreme Court's prohibition against the establishment of federal common law under FIR-REA in *O'Melveny*.

*Gravee*, 1995 WL at *5.

The RTC urges this Court not to follow *Gravee*, claiming that court erred in not conducting an inquiry into whether or not the Illinois Supreme Court would recognize the doctrine of adverse domination if confronted with the issue. The RTC's argument is based largely on Justice Stevens' concurrence in *O'Melveny*.

> In Justice Stevens' concurrence, he states [c]ases like this one, however, present a special problem. They raise issues, such as the imputation question here, that may not have been definitively settled in the state jurisdiction in which the case is brought, but that nevertheless must be resolved by federal courts. The task of the federal judges who confront such issues would surely be simplified if Congress had provided them with a uniform federal rule to apply. As matters stand, however, federal judges must do their best to estimate how the relevant state courts would perform their lawmaking task, and then emulate that sometimes purely hypothetical model.

*O'Melveny*, —— U.S. at ——, 114 S.Ct. at 2056 (Stevens, J., concurring). Substituting "adverse domination doctrine" for "imputation question" makes Justice Stevens' comments directly applicable to this case. The Court finds Justice Stevens' comments compelling. "In the absence of a decision by the highest state court, we should decide the matter in the way we divine that the highest state court would rule if the issue were squarely presented to it." *L.S. Heath & Son v. AT & T Information Systems*, 9 F.3d 561, 574 (7th Cir.1993). Given these mandates by the Supreme Court and the Seventh Circuit, the Court must respectfully disagree with *Gravee's* determination that Illinois' silence on the issue ends the inquiry. Rather this Court must examine Illinois law to determine if the Illinois Supreme Court would recognize the doctrine of adverse domination if presented with the issue. "In making that decision, this court must consider all the data which the Illinois Supreme Court would consider and follow the approach that Illinois courts take toward the problem." *UNR Industries, Inc. v. Continental Ins. Co.*, 607 F.Supp. 855, 863 (N.D.Ill.1984). "Decisions of intermediate appellate state courts generally control unless there are persuasive indications that the highest state court would decide the issue differently." *Heath*, 9 F.3d at 574 (citations omitted).

### 1. Illinois' Discovery Rule.

The RTC argues the adverse domination doctrine is a logical extension of Illinois' discovery rule. Several district courts sitting in states which recognized the discovery rule have held the adverse domination doctrine goes hand and glove with the discovery rule. *Farmer*, 865 F.Supp. at 1155–56; *RTC v. Smith*, 872 F.Supp. 805 (D.Or.1995), *petition for leave to appeal granted*, (9th Cir. April 7, 1995); *RTC v. O'Bear, Overholser, Smith & Huffer*, 840 F.Supp. 1270 (N.D.Ind.1993). Defendants' entire motion relies solely on *Gravee*. Defendants did not address how the Supreme Court of Illinois would rule if presented with the adverse domination doctrine. Although Defendants did file supplemental authority to their motion, none of the supplemental authority addresses Illinois law. Defendants cite *RTC v. Armbruster*, 52 F.3d 748 (8th Cir.1995), for the proposition that the Eighth Circuit "rejected adoption of adverse domination in light of lack of state law on [the] issue." *Armbruster* does not stand for that proposition. The most cursory review of *Armbruster* reveals that the Eighth Circuit relied upon existing case law of the

Supreme Court of Arkansas to determine that the Supreme Court of Arkansas would not recognize the adverse domination doctrine. Nowhere in the Eighth Circuit's analysis do they reason that due to a lack of state law on the issue they should refrain from recognizing the adverse domination doctrine. In the future, Defendants should be more cautious in characterizing the holding of a case. The other two cases cited by Defendants involve the validity of the adverse domination doctrine under Texas and Louisiana law. These cases are of no aid to the Court in determining the validity of the adverse domination doctrine under Illinois law.

Recently, the Supreme Court of Illinois discussed in detail the discovery rule as it exists in Illinois. *Hermitage Corporation et al. v. Contractors Adjustment Co. et al.,* 166 Ill.2d 72, 209 Ill.Dec. 684, 651 N.E.2d 1132 (1995). Given this recent pronunciation on the discovery rule by Illinois' highest court, extensive quotation from *Hermitage* is appropriate.

Literal application of the statute of limitations, however, sometimes produced harsh results, and in response, the discovery rule was developed. When the discovery rule is applied, it "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." (*Jackson Jordan, Inc. v. Leydig, Voit & Mayer* (1994), 158 Ill.2d 240, 249, 198 Ill. Dec. 786, 633 N.E.2d 627.) This rule developed to avoid mechanical application of a statute of limitations in situations where an individual would be barred from suit before he was aware that he was injured. This court first applied the rule in *Rozny v. Marnul* (1969), 43 Ill.2d 54, 250 N.E.2d 656, and discussed the circumstances in which the rule should be applied:

"The basic problem is one of balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff who neither knows nor should have known of the existence of his right to sue. There are some actions in which the passage of time, from the instant when the facts giving rise to

liability occurred, so greatly increases the problems of proof that it has been deemed necessary to bar plaintiffs who had not become aware of their rights of action within the statutory period as measured from the time such facts occurred. [Citations.] But where the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he knew or should have known of the existence of the right to sue. [Citations.]" *Rozny,* 43 Ill.2d at 70, 250 N.E.2d 656.

Courts have applied the discovery rule on a case-by-case basis, weighing the relative hardships of applying the rule to both plaintiffs and defendants. *Hermitage,* 209 Ill.Dec. at 687, 651 N.E.2d at 1135. The Supreme Court of Illinois has further held "[t]he Code of Civil Procedure is to be construed liberally, to the end that controversies are determined based upon the substantive rights of the parties." *Superior Bank FSB v. Golding,* 152 Ill.2d 480, 486, 605 N.E.2d 514, 517, 178 Ill.Dec. 720, 723 (1992).

So, in Illinois, if after weighing the relative hardships of applying the discovery rule to the plaintiff and defendant a court determines the discovery rule should apply, the relevant statute of limitations is tolled "until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Hermitage,* 209 Ill.Dec. at 687, 651 N.E.2d at 1135. When the plaintiff is a corporation, it can only learn it has been injured through its agents. While generally an agent's knowledge is imputed to the principal, *First Nat. Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1417 (7th Cir.1988), under Illinois agency law if the agent's interests are adverse to the principal's, the agent's knowledge is not imputed to the principal. *Id.*

In the instant case, therefore, Defendants' knowledge that they had wrongfully injured Security cannot be imputed to Security, now the RTC. Logical application of the discovery rule and Illinois agency law leads to the recognition of the adverse domination doctrine. "[T]he doctrine of adverse

domination presumes that while the wrong-doers possess knowledge of the claim, the potential corporate plaintiff, here [Security], does not have meaningful knowledge with the ability to act on that knowledge until the wrongdoing directors and officers no longer control it." *Farmer*, 865 F.Supp. at 1155.

█ In sum, the adverse domination doctrine is simply a common sense application of the discovery rule to a corporate plaintiff. If a company's board of directors is the only body which can bring a lawsuit on behalf of the company, and the board of directors are the only members of the company with the knowledge the company has a cause of action, and the members of the board of directors are the potential defendants in that cause of action, it is simply unreasonable to expect those individuals to sue themselves. For purposes of the discovery rule, therefore, the company does not know of its cause of action until the wrongdoing board of directors no longer controls it.

### 2. Illinois Appellate Courts.

The RTC asserts that two Illinois Appellate courts have tolled statutes of limitations using the rationale behind the adverse domination doctrine but without specifically citing the doctrine. In *Butts v. Estate of Butts*, 119 Ill.App.2d 242, 255 N.E.2d 622 (1970), Robert P. Butts, Jr. died owing $95,298.63 to Robert P. Butts and Company. The Company was owned by the Butts family with Robert P. Butts, Sr. owning 1,200 shares, Robert P. Butts, Jr. owning 100 shares, and two more sons owning 100 shares each. The Company sold insurance for various insurance companies. At the time Butts, Jr. died, the Company had collapsed and was in receivership. Through its receiver, the Company brought a claim against Butts, Jr.'s estate for the $95,298.63 which the Circuit Court allowed.

On appeal, Butts, Jr.'s estate raised several arguments in favor of reversal, one of which being that $17,250 of the money owed could not be collected because the statute of limitations had run. The court, addressing that issue, stated:

[t]he issue of the 5–year statute of limitations is controlled by *Auer v. William Meyer Co.*, 322 Ill App 244, 54 NE2d 394, which holds that where directors of a corporation violate a trust in a situation where the directors are in complete control of the affairs, and where no notice of the violation has reached a minority stockholder, the statute of limitations is not a bar to the assertion of the rights of such minority stockholder. Claimant was a family company charged with a public trust. Until the collapse of the claimant company or the death of the decedent, there was no one to assert the trust.

*Estate of Butts*, 119 Ill.App.2d at 249, 255 N.E.2d at 626. *Auer* held that the assets of a corporation are the equivalent of a trust fund with the corporate directors as trustees having a duty to preserve the trust. *Auer*, 322 Ill.App. at 260–61, 54 N.E.2d 394. If a director misapplies the corporation's assets, he violates the trust. *Id.* at 261, 54 N.E.2d 394. The court in *Auer* found that the controlling director and shareholder had wrongfully paid himself and his wife approximately $400,000.00 in bonuses over a sixteen year period, thus violating his duty as trustee to the minority shareholders. Relying on trust law principles, the court then found that the statute of limitations did not bar the plaintiffs' minority stockholder's complaint. *Id.* at 261, 54 N.E.2d 394. While the *Butts* case is difficult to interpret due to a lack of explanation, it is apparent the court, relying on *Auer*, based its ruling on the existence of a trust relationship between the decedent and the plaintiff company. *Butts*, 119 Ill.App.2d at 249, 255 N.E.2d at 626.

*Butts* and *Auer* are not directly on point with the instant case. The adverse domination doctrine is not based on a trust relationship between the corporate directors and the corporation. *Butts* and *Auer*, however, are supported by the same general notions of fairness as support the adverse domination doctrine. *Butts* and *Auer* teach that if a director puts his personal goals above those of the company's and the company thereby suffers, the statute of limitations will not bar the company from recovering from the director provided the company had no knowledge of the director's actions. The adverse domination doctrine does not require the director to put his personal goals before the

company, rather it simply realizes that if the director takes action which harms the company and for which the company may have legal recourse against the director, it is unreasonable to assume the director will act on the company's behalf and against himself.

So, while *Butts* and *Auer* do not directly support application of the adverse domination doctrine, the Court feels that the principles of equity supporting those cases also support application of the adverse domination doctrine in appropriate cases. The Court, relying on the above discussion and *Butts* and *Auer*, finds that the Illinois Supreme Court would recognize the doctrine of adverse domination. The contours of the doctrine, however, must be further developed.

### 3. Illinois' Adverse Domination Doctrine.

Initially, "balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff," the Court finds that this is an appropriate case to apply the discovery rule. *Hermitage*, 209 Ill.Dec. at 687, 651 N.E.2d at 1135. The actions of Defendants, or lack thereof, has been well documented. The passage of time, therefore, has not significantly increased the difficulty of proof in this case. On the other hand, not applying the discovery rule in the instant case would result in the RTC being unable to receive a judgment on the merits for damage claims exceeding $5 million. With the minimal increase in difficulty in proof and the potential loss of over $5 million in claims, the Court finds this case amenable to the discovery rule.

Having determined the discovery rule will be applied in this case and determining the Illinois Supreme Court would recognize the adverse domination doctrine, the Court must now determine which version of the doctrine would be adopted by the Illinois Supreme Court and if that version applies to this case. The different versions of the adverse domination doctrine and the rationale behind them have been thoroughly set out and discussed by Judge Rendell in *Farmer*. 865 F.Supp. at 1156–57. It would simply be redundant and use unnecessary space for this Court to rehash what has already been concisely and

completely discussed by Judge Rendell. That reasoning is hereby adopted.

■■■ Under Illinois law, when a defendant files a motion to dismiss claiming the statute of limitations has run, the plaintiff has the burden of providing facts to avoid application of the statute of limitations. *Hermitage*, 209 Ill.Dec. at 687–88, 651 N.E.2d at 1135–36. "When a plaintiff uses the discovery rule to delay commencement of the statute of limitations, the plaintiff has the burden of proving the date of discovery." *Id.* (citation omitted). The Court finds that these principles are best advanced by requiring the RTC to show Defendants had complete domination over Security. The complete domination version of the adverse domination doctrine puts a heavy burden on the RTC. This burden is appropriate because it is the RTC who is attempting to toll the statute of limitations.

To meet its burden, the RTC must show " 'full, complete and exclusive control in the directors or officers charged' with the wrongdoing." *Farmer*, 865 F.Supp. at 1156 (citations omitted). Furthermore, the Court finds the RTC must establish each "wrongdoer" was guilty of more than mere negligence. Under this version of the adverse domination doctrine "the statute will be tolled if there was no informed but not culpable person who was in a position to commence or cause the commencement of a lawsuit, and would continue to be tolled until such time as there was such a person (acting alone or with others), at which time the statute would begin to run." *Id.* at 1157–58. Determining whether or not complete domination existed and for how long requires a case-by-case analysis. *Id.* at 1157 n. 4.

### 4. Application of the Adverse Domination Doctrine to this case.

The Court cannot determine from the pleadings before it if the RTC has met its burden to establish complete domination. Accordingly, the RTC is ordered to submit a supplement to its memorandum in opposition to Defendants' motion to dismiss, establishing complete domination of Security from the

time it approved the commercial real estate loans until at least August 17, 1984.